## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

Number 10-869C

Judge George W. Miller

ICP NORTHWEST, LLC,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Cyrus E. Phillips IV

ALBO & OBLON, L.L.P.

Courthouse Plaza
2200 Clarendon Boulevard, Suite 1201
Arlington, Virginia 22201-3331

Attorney of record for Plaintiff, ICP Northwest, LLC.

REDACTED VERSION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………………iii-vi

QUESTIONS INVOLVED……………………………………………………………………………1

    I.  MAY THESE PROFFERED MULTIPLE REGIONAL AND NATIONWIDE
        FIRM FIXED-PRICE PRESEASON INCIDENT BLANKET PURCHASE AGREEMENTS
        BE LAWFULLY PUBLICLY COMPETED? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    II.  DO THE PROFERRED MULTIPLE REGIONAL AND NATIONWIDE FIRM FIXED-
        PRESEASON INCIDENT BLANKET PURCHASE AGREEMENTS GIVE PROPER PREFERENCE TO
        LOCAL *PRIVATE* ORGANIZATIONS, FIRMS, AND INDIVIDUALS WHEN RESPONDING TO
        ALL-HAZARD INCIDENTS? AND IS THE PREFERENCE GIVEN TO LOCAL GOVERNMENTS
        IN THESE PROFERRED MULTIPLE REGIONAL AND NATIONWIDE FIRM FIXED-PRICE
        PRESEASON INCIDENT BLANKET PURCHASE AGREEMENTS LAWFUL?………………………1

    III.  MAY THE PROPOSED PRESEASON INCIDENT BLANKET PURCHASE AGREEMENTS
         IMPOSE STATE LAW, AND STATE STANDARD TERMS AND CONDITIONS
        FOR STATE PUBLIC CONTRACTS, ON AWARDEES?………………………………………………1

    IV.  HAS DEFENDANT'S UNITED STATES FOREST SERVICE,
        AN AGENCY OF THE UNITED STATES DEPARTMENT OF AGRICULTURE,
        BREACHED THE IMPLIED-IN-FACT CONTRACT OF GOOD FAITH, FAIR DEALING,
        AND HONEST CONSIDERATION IN THESE PRICE-DRIVEN PUBLIC COMPETITIONS FOR
        MULTIPLE REGIONAL AND NATIONWIDE FIRM FIXED-PRICE PRESEASON INCIDENT
        BLANKET PURCHASE AGREEMENTS WHEN IT PUBLICLY COMPETES THESE
        PRESEASON INCIDENT BLANKET PURCHASE AGREEMENTS WHICH CONTAIN TERMS
        WHICH ARE ILLUSORY AND UNENFORCEABLE, LACK A RATIONAL BASIS, ARE
        UNREASONABLE OR IRRATIONAL, VIOLATE PROCUREMENT STATUTE AND REGULATION,
        AND THUS ARE ARBITRARY AND CAPRICIOUS?………………………………………………1-2

STATEMENT OF THE CASE………………………………………………………………………2-23

ARGUMENT ................................................................................................................ 23-41

I.   A LAWFUL PUBLIC COMPETITION REQUIRES THAT THE CONTRACTS TO BE AWARDED
     IMPOSE ENFORCEABLE OBLIGATIONS; THESE PROFERRED MULTIPLE REGIONAL AND
     NATIONWIDE PRESEASON INCIDENT BLANKET PURCHASE AGREEMENTS
     DO NOT IMPOSE ENFORCEABLE OBLIGATIONS ................................................ 23-32

II.  THESE PROFERRED MULTIPLE REGIONAL AND NATIONWIDE
     PRESEASON INCIDENT BLANKET PURCHASE AGREEMENTS DO NOT GIVE
     PROPER PREFERENCE TO LOCAL PRIVATE ORGANIZATIONS, FIRMS, AND
     INDIVIDUALS WHEN RESPONDING TO ALL-HAZARD INCIDENTS;
     MOREOVER, THE PREFERENCE GIVEN TO LOCAL GOVERNMENTS
     IN THESE PROFERRED MULTIPLE REGIONAL AND NATIONWIDE
     PRESEASON INCIDENT BLANKET PURCHASE AGREEMENTS IS AN
     IMPROPER NON-COMPETITIVE PROCUREMENT CONTRACT .................................... 33-36

III. THE PROPOSED PRESEASON INCIDENT BLANKET PURCHASE AGREEMENTS
     MAY NOT IMPOSE STATE LAW, AND STATE STANDARD TERMS AND CONDITIONS
     FOR STATE PUBLIC CONTRACTS, ON AWARDEES ........................................... 36-37

IV.  THE PROFFERED MULTIPLE NATIONWIDE FIRM FIXED-PRICE
     PRESEASON INCIDENT BLANKET PURCHASE AGREEMENTS
     WHICH ARE HERE PUBLICLY COMPETED ARE ILLUSORY; THESE
     PRICE-DRIVEN COMPETITIONS ARE THEREFORE A BREACH OF THE
     IMPLIED-IN-FACT CONTRACT OF GOOD FAITH, FAIR DEALING,
     AND HONEST CONSIDERATION ................................................................... 37-41

CONCLUSION ........................................................................................................... 41-42

CERTIFICATE OF SERVICE ............................................................................................ 43

TABLE OF AUTHORITIES

<u>CONSTITUTION AND STATUTES</u>

U.S. CONST., art. VI, cl. 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

10 U.S.C. § 101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

15 U.S.C. § 657a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C. § 657f. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

15 U.S.C. § 3710(d)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

28 U.S.C. § 451. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1491(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

31 U.S.C. §§ 6301-6309. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

31 U.S.C. § 6303(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34-35

41 U.S.C. § 253(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23, 30, 32, 35

41 U.S.C. § 253(g)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

41 U.S.C. § 253(g)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30-31

41 U.S.C. § 253a(c)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

41 U.S.C. § 351(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 5, 6, 36

41 U.S.C. § 403(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23-24, 30, 32

42 U.S.C. § 5121 *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

42 U.S.C. § 5150(a)(1)................................................................33, 34

2009 Oregon Revised Statutes § 63.077(2)(a)...........................................2

### *R̲E̲G̲U̲L̲A̲T̲I̲O̲N̲S̲*

4 C.F.R. § 21.11(b) (2010)..............................................................7

Federal Acquisition Regulation 1.102(b)(3)...........................................37

Federal Acquisition Regulation 1.102-2(c)(3)................................37-38, 39

Federal Acquisition Regulation 2.101................................................24

Federal Acquisition Regulation 4.1104.................................................2

Federal Acquisition Regulation Subpart 8.4..........................................39

Federal Acquisition Regulation 13.004(b)............................................27

Federal Acquisition Regulation 13.104...............................................31

Federal Acquisition Regulation 13.106-3(a)................................38, 40, 40-41

Federal Acquisition Regulation 13.303...............................................25

Federal Acquisition Regulation 13.303-1(a)..........................................25

Federal Acquisition Regulation 13.303-2(d)..........................................26

Federal Acquisition Regulation 13.303-3(a)(1).............................26, 30, 38

Federal Acquisition Regulation 13.303-3(a)(2)...................................26, 29

Federal Acquisition Regulation 13.303-5(a)..........................................34

Federal Acquisition Regulation 18.102. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Acquisition Regulation 26.202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Federal Acquisition Regulation 26.205. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

<u>CASES</u>

*AT&T Communications, Inc. v. Perry,*
296 F.3d 1307 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Allied Technology Group, Inc. v. United States,*
94 Fed. Cl. 16 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

*Boeing Sikorsky Aircraft Support,*
B-277263.2, B-277263.3, September 29th, 1997,
*1997 U.S. Comp. Gen. LEXIS 343.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Chem Service, Inc. v. United States Environmental Protection Agency,*
12 F.3d 1256 (3rd Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

*Dubinsky v. United States,*
43 Fed. Cl. 243 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*FFTF Restoration Co., LLC v. United States,*
86 Fed. Cl. 226 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*L-3 Communications Integrated Systems, L.P. v. United States,*
94 Fed. Cl. 394 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Leslie Miller, Inc. v. Arkansas,*
352 U.S. 187 (1956). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Magnum Opus Technologies, Inc. v. United States,*
94 Fed. Cl. 512 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30, 32

*Ober United Travel Agency v. United States DOL,*
135 F.3d 822 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

*OTI America, Inc. v. United States,*
68 Fed. Cl. 108 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Partridge v. Reich,*
141 F.3d 920 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34-35

*Resource Conservation Group, LLC v. United States,*
Fed. Cl. No. 08-768C, January 11th, 2011,
*2011 U.S. Claims LEXIS 6* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Ridge Runner Forestry v. Ann M. Veneman,*
*Secretary of Agriculture,*
287 F.3d 1058 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24-25, 31

*Serco, Inc. v. United States,*
81 Fed. Cl. 463 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40, 41

*System Fuels, Inc. v. United States,*
66 Fed. Cl. 722 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Trauma Services Group, Ltd. v. United States,*
33 Fed. Cl. 426 (1995), *aff'd on other grounds,*
104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

*United States v. Allegheny County,*
322 U.S. 174 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*United States v. City of Detroit,*
355 U.S. 466 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**PLAINTIFF'S BRIEF IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

### QUESTIONS INVOLVED

I. May these proffered multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements be lawfully publicly competed?

II. Do the proffered multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements give proper preference to local *private* organizations, firms, and individuals when responding to all-hazard incidents? And is the preference given to local Governments in these proffered multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements lawful?

III. May the Proposed Preseason Incident Blanket Purchase Agreements Impose State Law, and State Standard Terms and Conditions for State Public Contracts, on Awardees?

IV. Has Defendant's United States Forest Service, an Agency of the United States Department of Agriculture, breached the implied-in-fact Contract of good faith, fair dealing, and honest consideration in these price-driven public Competitions for multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements when it publicly competes these Preseason Incident Blanket Purchase Agreements which contain terms which are illusory and

**Redacted Version**

- 1 -

unenforceable, lack a rational basis, are unreasonable or irrational, violate procurement Statute and Regulation, and thus are arbitrary and capricious?

---

### STATEMENT OF THE CASE

---

#### PARTIES

##### PLAINTIFF

ICP Northwest is an Oregon Domestic Limited Liability Company, 2009 Oregon Revised Statutes § 63.077(2)(a), and a qualifying Service-Disabled Veteran-Owned Small Business Concern, 15 U.S.C. § 657f, listed in the Disaster Response Registry, Federal Acquisition Regulation 4.1104, 18.102, 26.205. ICP Northwest has a rental fleet of Mobile Command trailers, Clerical Support Units, and Geographic Information System Units. This rental fleet of equipment is specially-modified, unique, and technically complex, and is built for emergency response purposes. (http://www.-icpnw.com/emergencyservices/Office_Clerical_Units/, last visited January 12th, 2011.) Statement of Facts, Number 1.

##### DEFENDANT

Defendant United States Department of Agriculture is an Executive Department of the United States, 10 U.S.C. § 101; and Defendant United States Forest Service, an Agency of the United States

**Redacted Version**

Department of Agriculture, and Defendant United States Department of Agriculture, are both instrumentalities of the United States. Defendant United States Department of Agriculture and its Agency United States Forest Service is an "Agency" just as this term is defined in 28 U.S.C. § 451, and thus Defendant United States Department of Agriculture and its Agency United States Forest Service is also a "Federal agency" as is required by 28 U.S.C. § 1491(b)(1). Statement of Facts, Number 2.

### THE SOLICITATIONS

There are seven United States Forest Service Solicitations at issue here. Five of these United States Forest Service Solicitations, Solicitations Numbers AG-0343-S-11-7000 (Region 1), AG-84M8-S-11-7004 (Regions 2 and 4), AG-8371-S-11-7000 (Region 3), AG-9J61-S-11-7002 (Region 5), and AG-4H1-S-11-7002 (Region 6), are United States Forest Service Regional Acquisitions to hire specific Clerical Support Units for local and regional fire suppression and for all-hazard incidents (threats and hazards, both natural and human-caused); all of these Simplified Acquisition Procedure Solicitations to obtain firm fixed-price Quotations for the hire of specific Clerical Support Units; and for multiple regional Preseason Incident Blanket Purchase Agreements; proposed multiple regional Preseason Incident Blanket Purchase Agreements against which unilateral Orders for the hire of specific Clerical Support Units dedicated by Awardees to particular Host Dispatch Zones or Geo-

**Redacted Version**

- 3 -

graphic Area Coordination Centers will be issued by the United States Forest Service Contracting Officer or other specifically designated United States Forest Service personnel. Statement of Facts, Number 3.

The attributes of these required Clerical Support Units include the ability to provide on-site 24-hour office service, to be capable of producing multi-page copies and to be capable of providing basic word processing. These Clerical Support Units are to be self-contained, with supplies for seven consecutive days, and are also to provide 36-inch format plotter capability. These Clerical Support Units are to be operated by personnel furnished by the Awardees of the proposed multiple regional Preseason Incident Blanket Purchase Agreements. Personnel furnished by the Awardees of the proposed multiple regional Preseason Incident Blanket Purchase Agreements are to be compensated at Service Contract Act rates, 41 U.S.C. § 351(a). Statement of Facts, Number 4.

One of the seven United States Forest Service Solicitations at issue here, United States Forest Service Solicitation Number AG-024B-S-11-7001, is a United States Forest Service National Solicitation for Geographic Information System Units for local, regional, and nationwide fire suppression and for all-hazard incidents (threats and hazards, both natural and human-caused). Again, this is a Simplified Acquisition Procedure Solicitation to obtain firm fixed-price Quotations for the hire of specific Geographic Information System Units; and for multiple national Preseason Incident Blank-

et Purchase Agreements; proposed multiple national Preseason Incident Blanket Purchase Agreements against which unilateral Orders for the hire of specific Geographic Information System Units dedicated by Awardees to particular Host Dispatch Zones or Geographic Area Coordination Centers will be issued by the United States Forest Service Contracting Officer or other specifically designated United States Forest Service personnel. Statement of Facts, Number 5.

The attributes of the required Geographic Information System Units include, inter alia, four computer workstations with interior workspace sufficient to accommodate a total of six computer workstations, a color printer, a large format plotter, photo editing software, and a white board. Awardees of the proposed multiple national Preseason Incident Blanket Purchase Agreements are required to furnish, where Ordered, Geographic Information System Specialists to operate the Geographic Information System Units, these people trained in accordance with United States Forest Service requirements. Personnel furnished by the Awardees of the proposed multiple national Preseason Incident Blanket Purchase Agreements are to be compensated at Service Contract Act rates, 41 U.S.C. § 351(a). Statement of Facts, Number 6.

The last of the seven United States Forest Service Solicitations at issue here, United States Forest Service Solicitation Number AG-024B-S-11-7002, is a United States Forest Service National Solicitation for Communications Trailers for local, regional, and nationwide fire suppression and for all-

hazard incidents (threats and hazards, both natural and human-caused). Likewise, this is a Simpli-fied Acquisition Procedure Solicitation to obtain firm fixed-price Quotations for the hire of specific Communications Trailers; and for multiple national Preseason Incident Blanket Purchase Agree-ments; proposed multiple national Preseason Incident Blanket Purchase Agreements against which Orders for the hire of specific Communications Trailers dedicated by Awardees to particular Host Dispatch Zones or Geographic Area Coordination Centers will be issued by the United States Forest Service Contracting Officer or other specifically designated United States Forest Service personnel. Statement of Facts, Number 7.

The attributes of the required Communications Trailers include, inter alia, VHF and UHF Base Station radios; antennas; telephone/Internet service access panels, ports, and jacks; a local area net-work system, and an all-in-one fax, copier, scanner, and printer. Awardees of the proposed multiple national Preseason Incident Blanket Purchase Agreements are required to furnish personnel train-ed/certified to set-up and/or demonstrate operation and/or repair of the hired equipment. Personnel furnished by the Awardees of the proposed multiple national Preseason Incident Blanket Purchase Agreements are to be compensated at Service Contract Act rates, 41 U.S.C. § 351(a). Statement of Facts, Number 8.

Quotations in response to United States Forest Service Solicitation Number AG-0343-S-11-7000 (Region 1) are due to be submitted on or before Friday, January 14th, 2011. Quotations in response to United States Forest Solicitation Number AG-84M8-S-11-7004 (Regions 2 and 4) are due to be submitted on or before Friday, January 28th, 2011. Quotations in response to United States Forest Service Solicitation Number AG-8371-S-11-7000 (Region 3) are due to be submitted on or before Tuesday, February 8th, 2011. Quotations in response to United States Forest Service Solicitation Number AG-9J61-S-11-7002 (Region 5) are due to be submitted on or before Tuesday, January 25th, 2011 And Quotations in response to United States Forest Service Solicitation Number AG-4H1-S-11-7002 (Region 6) were due to be submitted on or before Wednesday, November 24th, 2010. Statement of Facts, Number 9.

ICP Northwest protested the proposed terms of United States Forest Service Solicitation Number AG-4H1-S-11-7002 (Region 6) in a filing with the United States Government Accountability Office on Saturday, November 20th, 2010. The United States Government Accountability Office dismissed this Pre-Award Procurement Protest filed by ICP Northwest on Friday, December 17th, 2010 upon the filing of this Pre-Award Procurement Protest with the Court. 4 C.F.R. § 21.11(b) (2010). Statement of Facts, Number 10.

**Redacted Version**

Quotations in response to United States Forest Service Solicitation Number AG-024B-S-11-7001 (National Geographic Information System Units) are due to be submitted on or before Monday, February 7th, 2011. And Quotations in response to United States Forest Service Solicitation Number AG-024B-S-11-7002 (National Communications Trailers) are due to be submitted on or before Friday, February 11th, 2011. Statement of Facts, Number 11.

### THE ORDERS TO BE PLACED

Orders to be placed by United States Forest Service Contracting Officers or other specifically designated United States Forest Service personnel for the hire of specific specially-modified equipment built for emergency response purposes located within an Awardee-designated City, State, and Zip Code and dedicated by an Awardee to a particular Host Dispatch Zone or Geographic Area Coordination Center, will, under these proposed multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements, be issued on a lowest-priced basis from Dispatch Priority Lists established by United States Forest Service Contracting Officers. These Dispatch Priority Lists will give first priority to HUBZone Small Business Concerns, 15 U.S.C. § 657a, and/or Service-Disabled Veteran-Owned Small Business Concerns, 15 U.S.C. § 657f, with the lowest quoted price from such an entity to be ranked highest on a Dispatch Priority List. Statement of Facts, Number 12.

**Redacted Version**

- 8 -

If there are insufficient low-priced Quotations from HUBZone and/or Service-Disabled Veter-an-Owned Small Business Concerns "to meet the anticipated need" for a particular Host Dispatch Zone or Geographic Area Coordination Center, then the United States Forest Service Contracting Officers or other specifically designated United States Forest Service personnel will issue Orders from other Dispatch Priority Lists established by United States Forest Service Contracting Officers, these other Dispatch Priority Lists based on Quotations from Small Business Concerns generally with, again, the lowest quoted price from such an entity to be ranked highest on a Dispatch Priority List. Statement of Facts, Number 13.

These Orders to be issued by United States Forest Service Contracting Officers or other speci-fically designated United States Forest Service personnel for the hire of specific specially-modified equipment built for emergency response purposes located within an Awardee-designated City, State, and Zip Code and dedicated by an Awardee to a particular Host Dispatch Zone or Geographic Area Coordination Center will be limited to $150,000. The multiple regional and nationwide firm fix-ed-price Preseason Incident Blanket Purchase Agreements preferred in these seven Solicitations will each be effective for a three-year term. Statement of Facts, Number 14.

Based on United States Forest Service historical data, and over the three-year performance period, it is possible that the total dollar value of Orders for the hire of specific specially-modified

equipment built for emergency response purposes placed by United States Forest Service Contracting Officers or other specifically designated United States Forest Service personnel against a single Preseason Incident Blanket Purchase Agreement could range from $1,000,000 to $3,000,000. Statement of Facts, Number 15.

This specific specially-modified equipment built for emergency response purposes under hire from United States Forest Service Contracting Officers or other specifically designated United States Forest Service personnel "may be operated and subjected to extreme environmental and/or strenuous operating conditions which could include but is not limited to unimproved roads, steep, rocky, hilly terrain, dust, heat, and smoky conditions." These proposed multiple nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements thus explicitly provide that "what is considered wear and tear under this agreement is in excess of what the resource is subjected to under normal operations and is reflected in the rates paid for the resource." Statement of Facts, Number 16.

THE QUOTATIONS

Awardees quoting specific Clerical Support Units for the proferred multiple regional firm fixed-price Preseason Incident Blanket Purchase Agreements are required to provide firm fixed-price Quotations for a Daily Rate for each Clerical Support Unit, and for printing, binding, and faxing

**Redacted Version**
- 10 -

tasks, and Internet capabilities, these firm fixed-price Quotations for specific Clerical Support Units located within an Awardee-designated City, State, and Zip Code and dedicated by an Awardee to a particular Host Dispatch Zone or Geographic Area Coordination Center. Lowest price is determined by United States Forest Service Contracting Officers or other specifically designated United States Forest Service personnel by calculating an assumed price based on the Quotation for a Daily Rate and on the Quotation for an assumed mix of printing and copying tasks, with the lowest calculated assumed price for each specific Clerical Support Unit ranked highest on Dispatch Priority Lists. Statement of Facts, Number 17.

Awardees quoting Geographic Information System Units for the proferred multiple national firm fixed-price Preseason Incident Blanket Purchase Agreements are required to provide firm fixed-price Quotations for a Daily Rate for each Geographic Information System Unit and for a Geographic Information System Specialist, this a person provided by the Awardee, paid at Service Contract Act labor rates, and trained in accordance with United States Forest Service requirements, these firm fixed-price Quotations for specific Geographic Information System Units located within an Awardee-designated City, State, and Zip Code and dedicated by an Awardee to a particular Host Dispatch Zone or Geographic Area Coordination Center. Lowest price is determined by United States Forest Service Contracting Officers or other specifically designated United States Forest Serv-

ice personnel based only on the quoted Daily Rate, with the lowest price for each specific Geographic Information System Unit ranked highest on Dispatch Priority Lists. Statement of Facts, Number 18.

Awardees quoting Communications Trailers for the proferred multiple national firm fixed-price Preseason Incident Blanket Purchase Agreements are required to provide firm fixed-price Quotations for a Daily Rate for each Communications Trailer, these firm fixed-price Quotations for specific Communications Trailers located within an Awardee-designated City, State, and Zip Code and dedicated by an Awardee to a particular Host Dispatch Zone or Geographic Area Coordination Center. Lowest price is determined by United States Forest Service Contracting Officers or other specifically designated United States Forest Service personnel based only on the quoted Daily Rate, with the lowest price for each specific Communications Trailer ranked highest on Dispatch Priority Lists. Statement of Facts, Number 19.

Awardees of these multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements have an opportunity each year to adjust their quoted prices; if quoted prices are not revised, the prices quoted for specific specially-modified equipment built for emergency response purposes located within an Awardee-designated City, State, and Zip Code and dedicated by an Awardee to a particular Host Dispatch Zone or Geographic Area Coordination

Center in the original regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements remain in effect. Awardees likewise have a yearly opportunity to change the particular Host Dispatch Zone or Geographic Area Coordination Center to which the Awardee choses to dedicate specific specially-modified equipment built for emergency response purposes. Statement of Facts, Number 20.

Likewise, Awardees of these multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements have an opportunity each year to change the attributes of the specific specially-modified equipment built for emergency response purposes which they have dedicated to the Preseason Incident Blanket Purchase Agreements. "Attributes" is undefined by these Solicitations save that the proposed multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements preclude changes in equipment typing (for example, a particular vehicle quoted one year as a Clerical Support Unit cannot be repurposed and quoted in a subsequent year as a Geographic Information System Unit) and preclude the addition of new specific specially-modified equipment built for emergency response purposes. Statement of Facts, Number 21.

These seven Solicitations are issued through the Federal Business Opportunities website (https://www.fbo.gov/, last visited January 17th, 2011) and the Solicitations use the United States For-

**Redacted Version**

- 13 -

est Service's Virtual Incident Procurement (VIPR) System. The VIPR System is a web-based on-line United States Forest Service software application, implemented nationwide in January 2009, and designed to administer Preseason Incident Blanket Purchase Agreements (http://www.fs.fed.us/-business/incident/vipr.php, last visited January 17th, 2011). Offerors are required to submit their Quotations using the VIPR System. Statement of Facts, Number 22.

AWARDEE PROMISES UNDER THE
PROFERRED PRESEASON INCIDENT BLANKET PURCHASE AGREEMENTS

All Awardees are required to provide a Unique Resource Descriptor, or Vehicle Identification Number, or Serial Number, for each specific specially-modified equipment unit built for emergency response that is to be located within an Awardee-designated City, State, and Zip Code and that is to be dedicated by an Awardee to a particular Host Dispatch Zone or a particular Geographic Area Co-ordination Center. Offerors with multiple specific specially-modified equipment units built for emergency response may propose multiple specific specially-modified equipment units built for emergency response located within Awardee-designated Cities, States, and Zip Codes, and may dedicate these specific specially-modified equipment units to multiple particular Host Dispatch Zones or Geographic Area Coordination Centers. But upon Award, each specific specially-modified equipment unit may be dispatched from only one specific location and must be dedicated by an Awardee

**Redacted Version**
- 14 -

to only one particular Host Dispatch Zone or Geographic Area Coordination Center. Statement of Facts, Number 23.

Awardees of the proferred multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements are responsible for providing availability status to the designated Host Dispatch Zone or Geographic Area Coordination Center within ten days after Award, and they are likewise responsible for maintaining notice of their availability, this notice to be provided to each designated Host Dispatch Zone or Geographic Area Coordination Center. Specific specially-modified equipment units may be replaced at any time with equal or better specially-modified equipment units. Replacement is permanent; intermittent replacement is not allowed and additional specific specially-modified equipment units may not be added to a Preseason Incident Blanket Purchase Agreement. Statement of Facts, Number 24.

### THE PRESEASON INCIDENT BLANKET PURCHASE AGREEMENTS

#### PROPOSED CONTRACT TERMS

These seven Solicitations compete proposed multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements which contain the following permissible term limiting the contractual obligation of the United States Forest Service to Orders to be placed by United States Forest Service Contracting Officers or other specifically designated United States

**Redacted Version**

Forest Service personnel with Awardees of these proposed multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements. The permissible term and the Solicitation provision in which it appears is here highlighted:

> PRICING AND ESTIMATED QUANTITY
>
> Since the needs of the Government and availability of Contractor's resources during an emergency cannot be determined in advance, it is mutually agreed that, upon request of the Government, the Contractor shall furnish the resources listed herein to the extent the Contractor is willing and able at the time of order. *Due to the sporadic occurrence of Incident activity, the placement of any orders IS NOT GUARANTEED.*

(Emphasis in original). Statement of Facts, Number 25.

These seven Solicitations compete proposed multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements which contain impermissible terms that impose illusory and unenforceable promises on both Awardees and on the United States Forest Service. The impermissible illusory and unenforceable promises in these proposed terms are here highlighted:

> PRICING AND ESTIMATED QUANTITY
> Since the needs of the Government and availability of Contractor's resources during an emergency cannot be determined in advance, *it is mutually agreed that, upon request of the Government, the Contractor shall furnish the resources listed herein to the extent the Contractor is willing and able at the time of order*. Due to the sporadic occurrence of Incident activity, the placement of any orders IS NOT GUARANTEED.

(Emphasis in original).

C.3 AGREEMENT AND PERFORMANCE PERIODS

**Redacted Version**

- 16 -

C.3.1 AGREEMENT PERIOD

*Since the resource needs of the Government and availability of Contractor's resources during an emergency cannot be determined in advance, it is mutually agreed that, upon request of the Government, the Contractor shall furnish the resources listed herein to the extent the Contractor is willing and able at the time of order.*

D.6 ORDERING PROTOCOL FOR RESOURCES

*This Agreement does not preclude the Government from using any* Agency *or* Agency Co-operator *owned resources before resources are mobilized under this Agreement.*

 (N.B. The phrase "Agency Cooperator" in Solicitation Provision D.6 designates "local Government entities available through agreement to assist the Federal and State Government agencies," i.e., the proposed multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements give a preference to the hire of specific specially-modified equipment units from "Agency Cooperators" "before equipment is mobilized under this Agreement").

D.6.1 DISPATCH PRIORITY

Each host dispatch center will give dispatch priority to the resources offering the greatest advantage (See D.6.2) before all other private resources not under Agreement with the following exceptions:

> a. *For initial attack, dispatchers will follow the "closest forces" concept and utilize locally available resources according to agency and incident needs. The priority dispatch ranking may not be used during initial attack and Contractor resources may or may not be used.*

> b. . . . . .

**Redacted Version**

- 17 -

c. Government normally will dispatch resources in accordance with this protocol; however, *the number of fire orders in process and actual fire conditions at the time of dispatch may require a deviation from normal procedures in order to respond effectively to such conditions. Any such deviation will be within the discretion of Government, and will not be deemed a violation of any term or condition of this Agreement.*

D.6.2 RANKING OF AWARDED RESOURCES FOR DISPATCH PRIORITY *CO*:

*May modify accordingly*

(N.B. The acronym "CO" in the title of Solicitation provision D.6.2 designates a United States Forest Service "Contracting Officer," i.e., United States Forest Service Contracting Officers may modify at will the ranking in the Dispatch Priority Lists of awarded resources (specific specially-modified equipment units) for dispatch priority).

D.6.3 ORDERING PROCEDURES FOR RESOURCES:

D.6.3.1 . . . . *The Government intends to dispatch contractor resources based on this priority ranking for other than initial attack.*

(N.B. These seven Solicitations place no time constraint on the period of an "Initial Attack." Instead, these seven Solicitations define an "Initial Attack" as:

A planned response to a wildfire given the wildfire's potential fire behavior. The objective of initial attack is to stop the spread of the wildfire and suppress it at least cost. An aggressive suppression action that is consistent with firefighter and public safety.

Statement of Facts, Number 26.

**Redacted Version**

- 18 -

The proposed multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements provide that United States Forest Service Contracting Officers "may or may not" use resources (specific specially-modified equipment units) available under the proposed multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements during "Initial Attack." Statement of Facts, Number 27.

### THE PROMISED PRICE REASONABLENESS EVALUATIONS

These seven Solicitations provide that "awards will only be made to those quoters offering a reasonable price and resources that are technically acceptable," that "[p]roposed pricing for ALL line items will be evaluated for reasonableness (emphasis in original)," and that "[r]easonable price technically acceptable will be the basis for the best value determination." Under these seven Solicitations, "[t]echnical acceptability will be determined on a pass/fail basis," and "[a]n offer will 'pass' if the offered resource meets the minimum requirements stated in the specifications and [the Offeror] has acceptable past performance." These seven Solicitations provide that the "quoted price will be evaluated for reasonableness in accordance with the Federal Acquisition Regulations." Statement of Facts Number 28.

In essence, these are seven price-driven public Competitions in which quoted firm fixed-price is the predominant consideration for Award and subsequent listing on Dispatch Priority Lists main-

tained by United States Forest Service Contracting Officers for particular Host Dispatch Zones or Geographic Area Coordination Centers. The Best Value algorithm here treats technical acceptability only as a "pass/fail" evaluation. If an Offeror submits the lowest-price Quotation for a specific type of specially-modified equipment unit built for emergency response purposes located within an Awardee-designated City, State, and Zip Code and dedicated by that Awardee to a particular Host Dispatch Zone or a particular Geographic Area Coordination Center, it does not matter that the specific type of specially-modified equipment unit built for emergency response purposes is some-how "better" than another specific type of specially-modified equipment unit built for emergency response purposes which is quoted. What counts is the lowest firm fixed-price Quotation for each specific type of specially-modified equipment unit built for emergency response purposes.

### STATE REQUIREMENTS UNDER THE PROPOSED PRESEASON INCIDENT BLANKET PURCHASE AGREEMENTS

United States Forest Service Solicitation Number AG-0343-S-11-7000 (Region1) for the hire of specific Clerical Support Units dedicated by Awardees to particular Host Dispatch Zones or Geographic Area Coordination Centers explicitly provides that those proposed multiple regional Preseason Incident Blanket Purchase Agreements "may be used by multiple State and Federal agencies." So also does United States Forest Service Solicitation Number AG-8371-S-11-7000 (Region 3) and United States Forest Service Solicitation Number AG-9J61-S-11-7002 (Region 5),

**Redacted Version**

- 20 -

again, these Solicitations for the hire of specific Clerical Support Units dedicated by Awardees to particular Host Dispatch Zones or Geographic Area Coordination Centers. Likewise, United States Forest Service Solicitation Number AG-024B-S-11-7001 (National Geographic Information System Units) and United States Forest Service Solicitation Number AG-024B-S-7002 (National Communications Trailers) both explicitly provide that the proposed multiple national Preseason Incident Blanket Purchase Agreements "may be used by multiple State and Federal agencies." Statement of Facts, Number 30.

But it is only United States Forest Service Solicitation Number AG-0343-S-11-7000 (Region1) which sets out the provisions of State Law, and State Standard Terms and Conditions for State Public Contracts, which are imposed on Awardees of the preferred multiple regional Preseason Incident Blanket Purchase Agreements. These include, among other things, the following State terms and conditions:

AUTHORITY: The attached bid, request for proposal, limited solicitation, or contract is issued under authority of Title 18, Montana Code Annotated, and the Administrative Rules of Montana, Title 2, chapter 5.

REDUCTION OF FUNDING: The State must terminate this contract if funds are not appropriated or otherwise made available to support the State's continuation of performance in a subsequent fiscal period. (See section 18-4-313(4), MCA.)

VENUE: This solicitation is governed by the laws of Montana. The parties agree that any litigation concerning this bid, request for proposal, limited solicitation, or subse-

**Redacted Version**

- 21 -

quent contract, must be brought in the First Judicial District in and for the County of Lewis and Clark, State of Montana, and each party shall pay its own costs and attorney fees. (Section 18-1-401, MCA.)

## 7. STATE OF IDAHO MINIMUM WAGE LAW

It will be the responsibility of the Contractor to fully comply with Section 44-1502, Idaho Code, regarding minimum wage.

## 17. APPROPRIATION BY LEGISLATURE REQUIRED

It is understood and agreed that the State is a government entity and this contract shall in no way or manner be construed so as to bind or obligate the state of Idaho beyond the term of any particular appropriation of funds by the State's Legislature as may exist from time to time. The State reserves the right to terminate this contract in whole or in part (or any order placed under it) if, in its judgment, the Legislature of the state of Idaho fails, neglects, or refuses to appropriate sufficient funds as may be required for the State to continue such payments. All affected future rights and liabilities of the parties hereto shall thereupon cease within ten (10) calendar days after notice to the Contractor. It is understood and agreed that the State's payments herein provided for shall be paid from Idaho State Legislative appropriations and, in some instances, direct federal funding.

## 19. GOVERNING LAW

This contract shall be construed in accordance with, and governed by the laws of the State of Idaho.

Statement of Facts, Number 31.

**Redacted Version**

ALL-HAZARD INCIDENT RESPONSES

The source of the United States Forest Service's obligation to respond to all-hazard incidents is set out in the "Interagency Agreement for Wildland Fire Management—FY 2011-FY 2015." (http://-www.fs.fed.us/fire/ibp/master_ia_wildland_fire_mgt.pdf, last visited January 14th, 2011). Paragraph III.A. of this Interagency Agreement explains that United States Forest Service responses to requests for all-hazard emergency support function activities is authorized by the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5121 *et seq.* Paragraph IV. of this Interagency Agreement defines an "all-hazard incident" as a major disaster or emergency which is set out in a Presidential Declaration or is a Fire Management Assistance Declaration issued by the United States Department of Homeland Security. Statement of Facts, Number 32.

---

ARGUMENT

---

I.  **A Lawful Public Competition Requires That the Contracts to be Awarded Impose Enforceable Obligations; These Preferred Multiple Regional and Nationwide Preseason Incident Blanket Purchase Agreements Do Not Impose Enforceable Obligations.**

Services such as the hire of the specific specially-modified equipment built for emergency response purposes under these seven Solicitations must be obtained "through the use of competitive procedures." 41 U.S.C. § 253(a)(1)(A). "Competitive procedures" are defined in the procurement

**Redacted Version**

Statutes as "procedures under which an agency enters into a *contract* pursuant to full and open competition." 41 U.S.C. § 403(5) (Emphasis added).

The Federal Acquisition Regulation carefully delimits procurement "Contracts" to those instruments which impose enforceable terms and obligations:

> "Contract" means *a mutually binding legal relationship obligating the seller to furnish the supplies or services (including construction) and the buyer to pay for them*. It includes all types of commitments that obligate the Government to an expenditure of appropriated funds and that, except as otherwise authorized, are in writing. *In addition to bilateral instruments, contracts include* (but are not limited to) awards and notices of awards; job orders or task letters issued under basic ordering agreements; letter contracts; *orders, such as purchase orders, under which the contract becomes effective by written acceptance or performance*; and bilateral contract modifications. . .

Federal Acquisition Regulation 2.101 (Emphasis added).

Are the preferred multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements these sort of procurement "Contracts"? Do these preferred multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements impose enforceable terms and obligations?

The United States Court of Appeals for the Federal Circuit has defined just what constitutes an enforceable procurement Contract:

> "To be valid and enforceable, a contract must have both consideration to ensure mutuality of obligation . . . and sufficient definiteness so as to 'provide a basis for determining the existence of a breach and for giving an appropriate remedy.'" *Ace-Federal Reporters,*

**Redacted Version**

- 24 -

*Inc. v. Barram, 226 F.3d 1329, 1332 (Fed. Cir. 2000)* (internal citations omitted). "To constitute consideration, a performance or a return promise must be bargained for." *Restatement (Second) of Contracts § 71(1)* (1979). And the "promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice of alternative performances . . . ." *Id.* § 77.

*Ridge Runner Forestry v. Ann M. Veneman, Secretary of Agriculture*, 287 F.3d 1058, 1061 (Fed. Cir. 2002).

But these proffered instruments are Blanket Purchase Agreements, not Contracts. Does this make a difference?

Federal Acquisition Regulation 13.303 establishes parameters for Blanket Purchase Agreements. Thus Federal Acquisition Regulation 13.303-1(a) provides that "[a] blanket purchase agreement (BPA) is a simplified method of filing anticipated repetitive needs for supplies or services by establishing 'charge accounts' with qualified sources of supply. . . ."

Blanket Purchase Agreements are thus akin to ordinary credit card accounts in the sense that ordinary credit card accounts establish the terms under which credit card holders may make charges with third parties on a line of credit advanced by credit card providers, these charges to be later repaid to the credit card provider. The credit card holder is typically under no obligation to the credit card provider until credit is advanced. Contrariwise, the credit card provider is obligated to make credit available to the credit card holder up to the limit of an agreed-upon line of credit even before

**Redacted Version**

the credit card holder makes charges with third parties. The extent of these obligations of the credit card provider to the credit card holder are defined in the terms of the credit card account itself, and not in the charge ticket generated by the third party.

Here, just as in an ordinary credit card account, it is the Blanket Purchase Agreement itself (the credit card account terms), not the Orders (credit charges) made under the Blanket Purchase Agreement, which documents the obligations of the parties and incorporates the necessary details. Federal Acquisition Regulation 13.303-2(d).

An Agency (credit card holder) is not obligated under a Blanket Purchase Agreement alone, but an Agency is obligated if Orders (credit charges) are made under a Blanket Purchase Agreement. Federal Acquisition Regulation 13.303-3(a)(2). Suppliers of goods or services who hold Blanket Purchase Agreements (credit card providers), on the other hand, are obligated, even before Orders (credit charges) are made under a Blanket Purchase Agreement, to:

> furnish supplies or services, described in general terms, if and when requested by the contracting officer (or the authorized representative of the contracting officer) during a specified period and within a stipulated aggregate amount, if any.

Federal Acquisition Regulation 13.303-3(a)(1).

Orders issued under Blanket Purchase Agreements which impose obligations on Awardees even before Orders are issued are binding Contracts because Awardees have already accepted such Blan-

**Redacted Version**

- 26 -

ket Purchase Agreements through discharge of their obligations to be ready to accept these Orders, and here, through their obligations (the agreed-upon line of credit): (1) to maintain notice of the availability of specific specially-modified equipment built for emergency response purposes, and (2) to maintain quoted prices for a three-year period else annually adjust these price Quotations. Federal Acquisition Regulation 13.004(b) ("*the supplier may indicate acceptance* by furnishing the supplies or services ordered or *by proceeding with the work to the point where substantial performance has occurred.*") (Emphasis added).

This Court recognizes that an Awardee's continuing obligation to accept Orders issued under a Blanket Purchase Agreement is sufficient for the Court to consider such a Blanket Purchase Agreement a binding Contract. *OTI America, Inc. v. United States*, 68 Fed. Cl. 108, 114-15 (2005)

Here, the United States Forest Service is akin to a credit card holder, and the Awardees of these multiple nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements are akin to credit card providers making available an agreed-upon line of credit.

Because these preferred multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements impose continuing obligations on Awardees, explicitly: (1) the obligation to be ready to accept Orders for the hire of specific specially-modified equipment built for emergency response purposes located within an Awardee-designated City, State, and Zip Code and

dedicated by an Awardee to a particular Host Dispatch Zone or Geographic Area Coordination Center (or, in another context, to make credit available), (2) the obligation to maintain notice of the continuing availability of this specific specially-modified equipment built for emergency response purposes, and (3) the obligation to maintain quoted firm fixed-prices for a three-year period, else annually adjust these price Quotations, these proferred multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements would otherwise be enforceable procurement Contracts were it not for the impermissible term which allows Awardees to avoid their obligation to accept Orders.

The highlighted snippet in the proposed PRICING AND ESTIMATED QUANTITY term which limits the United States Forest Service's contractual obligation to the extent only of Orders for the hire of specific specially-modified equipment built for emergency response purposes under Orders placed from Dispatch Priority Lists by the United States Forest Service Contracting Officer or other specifically designated United States Forest Service personnel, neither excuses nor authorizes the many, other illusory and unenforceable terms and obligations contained within the proferred multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements.

This highlighted snippet in the proposed PRICING AND ESTIMATED QUANTITY term limiting the United States Forest Service's contractual obligation to the extent only of Orders for the hire of specific specially-modified equipment built for emergency response purposes is expressly authorized by Federal Acquisition Regulation 13.303-3(a)(2); it does not, however, also authorize the illusory and unenforceable term which allows Awardees to avoid their obligation to be ready to accept Orders for the hire of specific specially-modified equipment built for emergency response purposes located within an Awardee-designated City, State, and Zip Code and dedicated by an Awardee to a particular Host Dispatch Zone or Geographic Area Coordination Center, *viz.* Awardees (credit card providers) are obligated under the proposed Preseason Incident Blanket Purchase Agreements to accept Orders (credit charges) only "to the extent" Awardees are "willing and able at time of order."

People would not use a credit card if the credit card provider, on a whim, could decline to advance credit on an agreed-upon line of credit when the credit card holder wanted to make a charge. If credit card holders do not breach the terms of their credit card agreement, then credit card providers are obligated to advance credit up to the limit of the agreed-upon line of credit. Here, the United States Forest Service cannot make lawful use of Blanket Purchase Agreements which do not

impose similarly enforceable obligations on Awardees (just like a line of credit advanced by credit card providers), this over a required three-year period.

A publicly competed procurement Contract must propose "some binding price that can be evaluated for purposes of a meaningful comparison . . . .", and it is "impermissible [for Federal Agencies] to evaluate relative [price] based only upon non-binding proposals, because such a comparison is not meaningful." *Magnum Opus Technologies, Inc. v. United States*, 94 Fed. Cl. 512, 535, 540 (2010) ("not to exceed" price caps eliminated in subsequent Competitions for task orders).

The obligation of Awardees to accept Orders under the proferred multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements is required by Federal Acquisition Regulation 13.303-3(a)(1), and because the proferred multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements here impose this obligation on Awardees only if they are "willing and able at time of order," the proferred multiple regional and nationwide Preseason Incident Blanket Purchase Agreements are illusory and unenforceable procurement Contracts which cannot be lawfully publicly competed as is required by 41 U.S.C. § 253-(a)(1)(A) and 41 U.S.C. § 403(5).

Even under Simplified Acquisition Procedures such as these seven Solicitations, Agencies must promote efficiency and economy in Contracting as is required by 41 U.S.C. § 253(g)(1), and Agen-

cies must promote Competition to the maximum extent possible as is required by 41 U.S.C. § 253-(g)(4). Federal Acquisition Regulation 13.104 explains that "Competition to the maximum extent possible" entails Contracting Officer ability to determine just which "offer [Quotation] is the most advantageous to the Government . . ." When Awardees are obligated under the proposed multiple Preseason Incident Blanket Purchase Agreements to accept Orders only "to the extent" Awardees are "willing and able at time of order," there can no such determination. Simplified Acquisition Procedures do not grant Agency Contracting Officers unfettered discretion to ignore the law. *Dubinsky v. United States*, 43 Fed. Cl. 243, 263 (1999).

Other illusory and unenforceable terms and obligations contained within the proferred multiple regional and nationwide Preseason Incident Blanket Purchase Agreements unlawfully reserve for United States Forest Service Contracting Officers a choice of alternative performances. *Ridge Runner Forestry*, 287 F.3d, at 1061.

These alternative performances include a preference for the hiring from "Agency Cooperators" of specific specially-modified equipment designed for emergency response purposes before Orders are placed from the Dispatch Priority Lists established under the proferred multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements; the lack of any time limitation on the period of an "Initial Attack," this a period when the United States Forest Service

"may or may not" use the preferred multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements; and the right of United States Forest Service Contracting Officers to modify at will the priority rankings in the Dispatch Priority Lists of specific specially-modified equipment designed for emergency response purposes, *System Fuels, Inc. v. United States*, 66 Fed. Cl. 722, 731 (2005) ("As a matter of law . . . the Government cannot amend the terms of [a Contract] *sua sponte* and without separate consideration evidencing acceptance of new terms.").

A choice among alternative performances which is available to only one party is not the consideration required to support a valid and enforceable Contract. And a proposed valid and enforceable procurement Contract is required by 41 U.S.C. § 253(a)(1)(A) and 41 U.S.C. § 403(5) in order to publicly compete a Federal Acquisition. To be sure, tribunals may not compel observance of illusory and unenforceable procurement Contracts, but tribunals with Procurement Protest jurisdiction, as is this Court, are required to compel public Competition of only valid and enforceable procurement Contracts. *Magnum Opus,* 94 Fed. Cl., at 540.

**II. These Proferred Multiple Regional and Nationwide Preseason Incident Blanket Purchase Agreements Do Not Give Proper Preference To Local *Private* Organizations, Firms, and Individuals When Responding To All-Hazard Incidents; Moreover, The Preference Given To Local Governments In These Proferred Multiple Regional and Nationwide Preseason Incident Blanket Purchase Agreements Is An Improper Non-Competitive Procurement Contract.**

The scope of these proposed multiple regional and nationwide firm fixed-price Blanket Purchase Agreements includes responses to all-hazard incidents. The Interagency Agreement defines an "all-hazard incident" as a major disaster or emergency which is set out in a Presidential Declaration or is a Fire Management Assistance Declaration issued by the United States Department of Homeland Security. Such major disasters, emergencies or fire management declarations include earthquakes, landslides, mud flows, severe winter storms, flooding, and wildfires. ([http://www.fema.gov/-news/disasters.fema](http://www.fema.gov/-news/disasters.fema), last visited January 17th, 2010).

A section of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5150(a)(1), requires that when Agencies respond to an all-hazard incident, they must give preference "by contract or agreement with *private* organizations, firms, or individuals" (emphasis added), and that this "preference shall be given, to the extent feasible and practicable, to those organizations, firms, and individuals residing or doing business primary in the area affected by such major disaster or emergency." This statutory preference requirement is repeated in Federal Acquisition Regulation 26.202.

**Redacted Version**

- 33 -

These proffered multiple nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements create a preference not for local *private* organizations, firms, or individuals, but instead, in the guise of "Agency Cooperators," create a preference for "local Government entities available through agreement to assist the Federal and State Government agencies."

Federal Acquisition Regulation 13.303-5(a) permits the use of Blanket Purchase Agreements only when Orders "are otherwise authorized by law or regulation." Because these proffered multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements create a preference not for local *private* organizations, firms, or individuals responding to all-hazard incidents, but instead, create a preference for "local Government entities," they violate 42 U.S.C. § 5150-(a)(1), Federal Acquisition Regulation 13.303-5(a), and Federal Acquisition Regulation 26.202.

Use of "Agency Cooperator"-owned "resources" under the proposed Preseason Incident Blanket Purchase Agreements is, per these seven Solicitations, by "Agreement" between the United States Forest Service and a local Government entity.

The Federal Grant and Cooperative Agreement Act, 31 U.S.C. §§ 6301-6309, teaches that there are three sorts of such Agreements: procurement Contracts, Grants, and Cooperative Agreements. 31 U.S.C. § 6303(1) demands that Federal Agencies use procurement Contracts when the principal purpose of an Agreement with a local Government entity is to acquire "prop-

erty or services for the United States Government." *Accord, Partridge v. Reich*, 141 F.3d 920, 924 (9th Cir. 1998). Grants or Cooperative Agreements may not be used to circumvent Federal procurement law. *Cf. Chem Service, Inc. v. United States Environmental Protection Agency*, 12 F.3d 1256, 1266 (3rd Cir. 1993) (Cooperative Research and Development Agreements, 15 U.S.C. § 3710a(d)(1)). These "Agreements," because of their purpose, must in reality be procurement Contracts, not Cooperative Agreements.

And, more to the point, any such "Agreements" with local Government entities must be publicly competed as are all *procurement Contracts*, and just as these proffered multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements are here being publicly competed, 41 U.S.C. § 253(a)(1)(A), because under the Federal Grant and Cooperative Agreement Act of 1977, 31 U.S.C. § 6303(1), their "principal purpose" can only be, as it relates to these proffered multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements, "to acquire (by purchase, lease, or barter) *property or services for the direct benefit or use of the United States Government*." (Emphasis added). *Ober United Travel Agency v. United States DOL*, 135 F.3d 822, 824 (D.C. Cir. 1998); *Trauma Services Group, Ltd. v. United States*, 33 Fed. Cl. 426, 429 (1995), *aff'd on other grounds*, 104 F.3d 1321, 1326 (Fed. Cir. 1997).

A response to a wildland fire on Federal lands or to an all-hazard incident with specific specially-modified equipment built for emergency response purposes and hired from an "Agency Cooperator" is clearly a service for the *direct benefit* of the United States Government, and thus it is a service which must be publicly competed. The full scope of this unlawful preference created for Agency Cooperators in these seven Solicitations, both for wildland fires and for all-hazard incidents, is broad enough to render the proposed multiple regional and nationwide Preseason Incident Blanket Purchase Agreements illusory and unenforceable, and thereby incapable of being lawfully publicly competed.

### III. The Proposed Preseason Incident Blanket Purchase Agreements May Not Impose State Law, and State Standard Terms and Conditions For State Public Contracts, On Awardees.

The terms of the proferred multiple regional Preseason Incident Blanket Purchase Agreements for the hire of Clerical Support Units which are set out in the United States Department of Agriculture's Forest Service Solicitation Number AG-0343-S-11-7000 (Region 1) unlawfully impose provisions of State Law, and provisions of State Standard Terms and Conditions for State Public Contracts, on Awardees of those proferred regional Preseason Incident Blanket Purchase Agreements. These offending provisions include subjecting any Orders placed by Montana State Agencies to the laws of Montana; subjecting any Orders placed by Idaho State Agencies to the Idaho minimum wage law, rather than to the Service Contract Act rates, 41 U.S.C. § 351(a), which are set out in the

**Redacted Version**

- 36 -

Solicitation; and excusing any breaches of an Order placed by an Idaho State Agency if there is a lapse of appropriated Idaho State funds.

This is a violation of the *Supremacy Clause*, U.S. CONST., art. VI, cl. 2:

> The purpose of the *Supremacy Clause* was to avoid the introduction of disparities, confusions and conflicts which would follow if the Government's general authority were subject to local controls. *The validity and construction of contracts through which the United States is exercising its constitutional functions, their consequences on the rights and obligations of the parties, the titles or liens which they create or permit, all present questions of federal law not controlled by the law of any state.*

*See United States v. Allegheny County*, 322 U.S. 174, 183 (1944), *rev'd on other grounds in United States v. City of Detroit*, 355 U.S. 466 (1958). (Emphasis added).

The imposition of State Law, and of State Standard Terms and Conditions for State Public Contracts, on these Awardees, Federal Contractors, will result in interference with Federal Government functions, and is in unlawful conflict with Federal procurement law and regulation. *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 189-90 (1956).

**IV. The Proffered Multiple Regional and Nationwide Firm Fixed-Price Preseason Incident Blanket Purchase Agreements Which Are Here Publicly Competed Are Illusory; This Price-Driven Competition Is Therefore A Breach Of The Implied-In-Fact Contract Of Good Faith, Fair Dealing, And Honest Consideration.**

Federal Acquisition Regulation 1.102(b)(3) mandatorily requires Agencies to act with "integrity, fairness, and openness" in conducting Acquisitions, and Federal Acquisition Regulation 1.102-2-

(c)(3) mandatorily requires Agencies to "use sound business judgment," to "comply with applicable laws and regulations in dealing with . . . prospective contractors," and to treat prospective Contractors "fairly and impartially." These two procurement Regulations thus define the reach and scope of the implied-in-fact Contract of fair and honest consideration, *FFTF Restoration Co., LLC v. United States*, 86 Fed. Cl. 226, 237-38 (2009), which is here imposed on the United States Forest Service by 28 U.S.C. § 1491(a)(1), *L-3 Communications Integrated Systems, L.P. v. United States*, 94 Fed. Cl. 394, 398 (2010).

The problem with these seven Acquisitions as they are now being publicly competed is that United States Forest Service Contracting Officers cannot make the Price Reasonableness determination required by Federal Acquisition Regulation 13.106-3(a) for each specific specially-modified equipment unit built for emergency response purposes located within an Awardee-designated City, State, and Zip Code and dedicated by an Awardee to a particular Host Dispatch Zone or a particular Geographic Area Coordination Center when such a Price Reasonableness determination would be based on an illusory promise by such an Awardee and thus would proceed from an irrational assumption, *viz.*, that *an Awardee could be bound to its obligation to accept Orders* under one of the proferred multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements as is required by Federal Acquisition Regulation 13.303-3(a)(1).

**Redacted Version**

- 38 -

If Awardees are allowed, as here, to accept such Orders only "to the extent" Awardees are "willing and able at time of Order," then the firm fixed-prices in the Quotations submitted in response to these seven Solicitations are meaningless.

A car dealer can very well advertise the hire of a vehicle at any price provided that the car dealer is obligated to tender that vehicle for hire only if it is "willing and able." So too here. There can be no fair and honest consideration in price-driven public Competitions when the Contracts which are being competed are only illusory promises. An honest public Competition requires that Offerors obligate themselves to accept Orders under the preferred multiple regional and nationwide firm fixed-price Preseason Incident Blanket Purchase Agreements at prices to which they will be bound.

It is fundamentally unfair when public Contractors are expected to compete as Offerors in a price-driven Competition against Quotations which are no more than Chimeras. *Allied Technology Group, Inc. v. United States*, 94 Fed. Cl. 16, 44 (2010) (Public Competition for a Blanket Purchase Agreement under Federal Acquisition Regulation Subpart 8.4 requires a procurement process which, although it need not comply with the more formal and rigorous procedures for negotiated procurements, is fundamentally fair). The terms of these seven Acquisitions as they are now proposed do not reflect the "sound business judgment" required by Federal Acquisition Regulation 1.102-2(c)(3).

**Redacted Version**

- 39 -

There is no reasonable basis for these seven Solicitations, the terms of which impose only illusory promises on the Awardees and thus proceed from an irrational assumption. The terms proposed by these seven Solicitations violate procurement Statutes and Regulations. The conduct here of the United States Forest Service is arbitrary and capricious, and this conduct is, therefore, a breach of the implied-in-fact Contract of fair and honest consideration. *Resource Conservation Group, LLC v. United States*, Fed. Cl. No. 08-768C, January 11th, 2011, *2011 U.S. Claims LEXIS 6, *24*, *citing AT&T Communications, Inc. v. Perry*, 296 F.3d 1307, 1312 (Fed. Cir. 2002).

The Price Reasonableness determination required by Federal Acquisition Regulation 13.106-3-(a) implements the requirement of procurement Statute that "cost or price to the Federal Government [is] an evaluation factor that must be considered . . . ." 41 U.S.C. § 253a(c)(1)(B). *Serco, Inc. v. United States*, 81 Fed. Cl. 463, 491 (2008) ("an evaluation that fails to give price its due consideration is inconsistent with [the Competition in Contracting Act] and cannot serve as a reasonable basis for an award."), *citing Boeing Sikorsky Aircraft Support*, B-277263.2, B-277263.3, September 29th, 1997, *1997 U.S. Comp. Gen. LEXIS 343, *22-*24* (Agencies must consider the most probable total cost of the competing proposals).

This Statutory requirement for due consideration of total cost or price applies to all multiple award Contracts, *Serco*, 81 Fed. Cl., at 491-92, and it resides in the requirement of Federal Acquisi-

tion Regulation 13.106-3(a) that each Awardee's price Quotation for each specific specially-modified equipment unit built for emergency response purposes located within an Awardee-designated City, State, and Zip Code and dedicated by an Awardee to a particular Host Dispatch Zone or a particular Geographic Area Coordination Center must be determined by these United States Forest Service Contracting Officers to be "fair and reasonable," *Serco*, 81 Fed. Cl., at 494-95. Here, any such determinations are precluded because Awardees are allowed to accept Orders at quoted prices only "to the extent" Awardees are "willing and able at time of Order."

---

## CONCLUSION

---

For all of the reasons set forth in the foregoing Brief in Support of Plaintiff's Motion for Judgment on the Administrative Record, ICP Northwest respectfully requests that the Court enter Judgment for ICP Northwest on this Administrative Record, RCFC 52.1(c)(1).

Respectfully submitted,

/s/ Cyrus E. Phillips IV

---

Cyrus E. Phillips IV

Virginia State Bar Number 03135

January 21st, 2011

**Redacted Version**

- 41 -

ALBO & OBLON, L.L.P.

Courthouse Plaza
2200 Clarendon Boulevard, Suite 1201
Arlington, Virginia 22201-3331

Telephone:          (703) 562-3382
Facsimile:          (703) 312-0415
Mobile:             (703) 819-5944
Electronic Mail:    lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
ICP Northwest, LLC.

**Redacted Version**
- 42 -

CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Friday, January 21st, 2011 a true and complete copy of this Plaintiff's Brief in Support of Plaintiff's Motion for Judgment on the Administrative Record was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Renee A. Gerber, Esq.

Electronic Mail:      Renee.A.Gerber@usdoj.gov

Attorney of record for Defendant,
United States Forest Service.

/s/ Cyrus E. Phillips IV
_____
Cyrus E. Phillips IV

**Redacted Version**

- 43 -